UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

           -v.-                            :

AMIT FORLIT,                            :

            Defendant.         :

- - - - - - - - - - - - - - - - - x

**SEALED INDICTMENT**

22 Cr. _____

**22 CRIM 645**

## COUNT ONE
### (Conspiracy to Commit Computer Hacking)

The Grand Jury charges:

### Relevant Persons and Entities

1.    At all relevant times, AMIT FORLIT, the defendant, was a citizen and resident of Israel.  FORLIT was a leader of a sprawling cybercriminal enterprise that operated primarily through three Israel-based security and intelligence-gathering firms ("Firm-1," "Firm-2," and "Firm-3," and collectively, the "Firms"). The Firms engaged in the criminal conduct described herein, involving co-conspirators and infrastructure located in the United States, the United Kingdom, Israel, and India, among other places.

2.    At all relevant times, Aviram Azari ("Azari") was the principal and owner of an Israel-based private investigation and intelligence firm (the "Azari Firm") that contracted with the Firms, and a co-conspirator not named herein ("CC-1"), was an employee of the Azari Firm.

3.    At all relevant times, several other co-conspirators not named herein, including "CC-2" and "CC-3," were members of a hacking group based in New Delhi, India (the "Hacking Group").

4.    At all relevant times, "Company-1" was a U.S.-based public affairs, lobbying, and business consulting company, headquartered in Washington, D.C., and "Individual-1" was a principal at Company-1.

5.    At all relevant times, "Client-1" was a client of Company-1 and one of the world's largest oil and gas corporations, with headquarters in Irving, Texas.

6.    At all relevant times, "Victim-1" and "Victim-2" worked for a non-profit organization based in California that focused on advocacy relating to, among other things, climate change ("Victim Organization-1").

7.    At all relevant times, "Victim-3" and "Victim-4" were employees at a public affairs and political consulting firm based in New York, New York, Washington, D.C., and Albany, New York ("Victim Organization-2").

8.    At all relevant times, "Victim-5" was an employee at an international environmental organization headquartered in New York, New York ("Victim Organization-3").

## Overview

9. From at least in or about 2012 through at least in or about 2019, AMIT FORLIT, the defendant, operated the Firms, which specialized in, among other things, intelligence gathering operations through offensive and defensive cyber capabilities, including computer intrusions. The Firms ran operations from activity centers located in Israel, London, Paris, Moscow, Singapore, and Dubai, and conducted business worldwide, including in the United States, Europe, and Asia.

10. From at least in or about 2012 through at least in or about 2019, AMIT FORLIT, the defendant, orchestrated massive computer hacking crimes against corporations, organizations, and individuals, including victims located in the Southern District of New York. Working with co-conspirators, including, at times, Azari, CC-1, and CC-2, among others, FORLIT directed network intrusions targeting Victims-1 through -5, among others, which resulted in the theft of confidential business and personal information of over one hundred victims, some of which was provided to Company-1, including for the benefit of Client-1. FORLIT and his co-conspirators generated tens of millions of dollars in unlawful proceeds from the scheme.

3

### Execution of the Climate Change Project

11. Starting at least in or about 2013, Company-1 engaged the Firms to provide protective services and conduct research and information gathering for specified projects on behalf of various clients of Company-1.

12. In or about October 2015, Client-1 engaged Company-1 to assist in litigation stemming from civil investigations into Client-1, and in particular, climate change issues (the "Climate Change Litigation"). One of the projects that the Firms worked on for Company-1 involved targeting certain individuals affiliated with groups that focus on climate change and environmental issues, including victims located in the Southern District of New York (the "Climate Change Project"). The Climate Change Project relied on computer hacking and other cybercrimes committed by Azari, among others, at the direction of AMIT FORLIT, the defendant.

13. AMIT FORLIT, the defendant, and his co-conspirators executed the Climate Change Project using the following methods and means in furtherance of the conspiracy, among others:

a.   In or about October 2015, Individual-1 contacted FORLIT regarding the Climate Change Project.

b.   On or about November 3, 2015, Individual-1 sent an email to FORLIT about the founder of Victim Organization-1 (the

4

"Victim Organization-1 Founder"). Minutes later, FORLIT responded, and directed Indiviudal-1 to an encrypted messaging application. Approximately one minute later, Individual-1 sent a memorandum (the "November 2015 Memo") to FORLIT with a cover email that stated, in substance and in part, "This is what I gave the client yesterday. See point number 2. This is how I would operationalize the research on the bad guys." The November 2015 Memo referenced "[r]ecent attacks on [Client-1] over climate change by groups on the left" and the "opportunity to go 'on offense'." With respect to "point number 2," the November 2015 Memo contemplated "highlight[ing] the statements and true agenda of the individuals behind" various climate change advocacy organizations, including Victim Organization-1.

c. On or about November 5, 2015, FORLIT emailed Individual-1 the Firms' proposal (the "Proposal"). The Proposal outlined the anticipated phases of the Firms' work on the Climate Change Project, including various methods of intelligence gathering and efforts to "continue to gather relevant evidence" for Client-1's use, including political lobbying and/or legal proceedings. The Proposal contemplated a monthly budget of $125,000 for the Firms' work on the Climate Change Project.

d.    Between at least in or about November 2015 and at least in or about October 2017, the Firms, at the direction of FORLIT, contracted with others, including Azari, in connection with the Firms' work for Company-1 on the Climate Change Project. Azari and CC-1 in turn hired hackers, including the Hacking Group, to gain unauthorized access to the electronic accounts of the targets of the Climate Change Project (the "Climate Change Project Targets," or the "Targets") through spearphishing[1] and other hacking methods.  For example:

i.    On or about December 3, 2015, CC-1 sent CC-2 an email with attachments that contained personal information -- including names, photographs, background information, email accounts, addresses, and phone numbers -- of various Climate Change Project Targets, including Victim Organization-1 Founder and Victim-1.

ii.    In or about March 2016, CC-1 sent CC-2 an email stating in substance and part that the Hacking Group, having sent spearphishing emails to Victim-1, had successfully hacked into an electronic account belonging to Victim-1.

---

[1] Spearphishing is a type of cyber attack that targets specific individuals or organizations, typically through malicious emails, in an attempt to steal sensitive information such as login credentials.

   iii.  On or about December 16, 2015, CC-1 sent CC-2 an email entitled "New" with an attachment that contained a list of new Climate Change Project Targets, including Victim-1 and Victim-2.

   iv.  On or about February 15, 2016, CC-2 sent Azari and CC-1 an email stating that the Hacking Group, having sent spearphishing emails to Victim-2, had successfully hacked into two electronic accounts belonging to Victim-2 using a Virtual Private Network ("VPN") server, and attached screenshots of the hacked Victim-2 accounts.

   v.  On or about June 20, 2017, CC-2 sent Azari and CC-1 an email stating that CC-2's team, having sent spearphishing emails to Victim-3, an individual based in the Southern District of New York, had successfully hacked into two electronic accounts belonging to Victim-3 using a VPN server located in New York, and attached screenshots of the hacked Victim-3 accounts.

   vi.  On or about November 7, 2017, CC-2 sent Azari and CC-1 an email stating that the Hacking Group, having sent spearphishing emails to Victim-4, had successfully hacked into two electronic accounts belonging to Victim-4 using a VPN server, and attached screenshots of the hacked Victim-4 accounts.

7

vii.    On or about July 21, 2017, CC-2 sent Azari and CC-1 an email stating that the Hacking Group, having sent spearphishing emails to Victim-5, had successfully hacked into two electronic accounts belonging to Victim-5 using a VPN server located in New York, and attached screenshots of the hacked Victim-5 accounts.

e.    The Firms' contracts with Azari (through various of Azari's shell companies) and Azari's invoices to the Firms requested payment for services described as, among other things, "consulting" or providing "investigative services to [Firm-2] and its clients." Many of the invoices from Azari to the Firms track the timing of the hacking of the Targets' electronic accounts.

f.    The Hacking Group emailed "success reports" to Azari and other co-conspirators, and uploaded hacked data from the Targets for distribution to Azari and other co-conspirators.

g.    After obtaining the data stolen by the Hacking Group from Climate Change Project Targets (the "Hacked Data"), Azari and other co-conspirators provided the Hacked Data to FORLIT.

h.    In turn, the Firms, at the direction of FORLIT, provided certain of the Hacked Data to Individual-1 at Company-1.

14. Certain materials from the Hacked Data were used in connection with Company-1's lobbying work for Client-1 and in Client-1's court filings in the Climate Change Litigation.

15. The Firms submitted invoices from Firm-3 to Company-1 for work performed on the Climate Change Project. Company-1 paid those invoices via wire transfer, including wire transfers that passed through one or more correspondent bank accounts located in the Southern District of New York, and then billed the invoices to Company-1 billing codes associated with Client-1.

16. Between at least in or about 2014 and at least in or about 2017, the Firms earned at least approximately $7 million in illicit proceeds, including for the Firms' work on the Climate Change Project, which AMIT FORLIT, the defendant, received into U.S.-based bank accounts. Between at least in or about 2015 and at least in or about 2017, the Firms paid Azari at least approximately $290,500 for hacking, including the targeting of the Climate Change Project Targets.

## STATUTORY ALLEGATIONS

17. From at least in or about 2012 through at least in or about 2019, in the Southern District of New York and elsewhere, AMIT FORLIT, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed

together and with each other to commit offenses against the United States, to wit, computer hacking, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B)(i) and (iii).

18.    It was a part and an object of the conspiracy that AMIT FORLIT, the defendant, and others known and unknown, would and did intentionally access a computer without authorization and exceed authorized access, and thereby obtain information from a protected computer, to wit, the contents of personal and business electronic accounts, for purposes of commercial advantage and private financial gain, and the value of the information obtained exceeded $5,000, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B)(i) and (iii).

Overt Act

19.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.    On or about November 5, 2015, AMIT FORLIT, the defendant, sent Individual-1 the Proposal (*i.e.*, the Firms' proposal for their work on the Climate Change Project).

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

20.    The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if fully set forth herein.

21.    From at least in or about 2012 through at least in or about 2019, AMIT FORLIT, the defendant, and others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

22.    It was a part and an object of the conspiracy that AMIT FORLIT, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, FORLIT and his co-conspirators perpetrated a scheme (the "Scheme") targeting victims located in the Southern District of New York and elsewhere,

including by sending false and fraudulent emails intended to trick the victims into entering their electronic account usernames and passwords into false and fraudulent websites controlled by the defendant and his co-conspirators, for the purpose of obtaining the contents of the victims' electronic accounts without authorization, and in furtherance thereof, caused to be transmitted interstate and foreign emails and wire transfers through the Southern District of New York.

(Title 18, United States Code, Section 1349.)

### COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

23.    The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if fully set forth herein.

24.    From at least in or about 2012 through at least in or about 2019, in the Southern District of New York and elsewhere, AMIT FORLIT, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals,

12

pictures, and sounds for the purpose of executing such scheme and artifice, to wit, FORLIT and his co-conspirators perpetrated the Scheme, and in furtherance thereof caused to be transmitted interstate and foreign emails and wire transfers through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

25. As a result of committing the computer hacking offense alleged in Count One of this Indictment, AMIT FORLIT, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1030(i), any and all property, real and personal, constituting or derived from, any proceeds obtained directly or indirectly, as a result of said offense, and any and all personal property that was used or intended to be used to commit or to facilitate the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

26. As a result of committing the wire fraud offenses alleged in Counts Two and Three of this Indictment, AMIT FORLIT, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

<u>Substitute Assets Provision</u>

27.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code,

14

Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 & 1030;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

11/30/22

DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

AMIT FORLIT,

Defendant,

SEALED INDICTMENT

22 Cr. ___

(18 U.S.C. §§ 371, 1343, 1349, and 2.)

DAMIAN WILLIAMS
United States Attorney.

TRUE BILL

██████████████████████

FOREPERSON

11/30/22

*Filed Sealed Indictment Arrest warrants*

*KL*
*11/30/22*

*Stewart D. Aaron*
*USMJ.*